UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
OSKANA ROMALIS,

                     Petitioner,

     – against –

UNITED STATES OF AMERICA,

                     Respondent.
------------------------------------------x

15-cv-9881 (TPG)
11-cr-0120 (TPG)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/17

Oksana Romalis brings this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence due to ineffective assistance of counsel. Romalis alleges that her trial counsel, Harvey Slovis, provided ineffective assistance by failing to properly inform her of the possible sentence she faced if convicted. Romalis also states that she was involved in a romantic relationship with Slovis while he represented her. For the reasons discussed below, Romalis's motion is denied.

**BACKGROUND**

The Government charged Romalis with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and also mail fraud in violation of 18 U.S.C. § 1341 and 1342. Romalis was alleged to have participated in a 1994–2010 scheme to defraud the Conference on Jewish Material Claims Against Germany (the "Claims Conference")—an organization that makes reparations to Jewish

1

survivors of Nazi persecution. Romalis, along with her co-conspirators, submitted fraudulent applications for reparation funds.

Romalis was represented by Harvey Slovis during all pretrial, trial, and sentencing proceedings.

In June 2012, the Government extended a plea offer to Romalis. Romalis Aff. at 3. The plea offer set forth a base offense level of 7, a 12-level increase based on a loss amount of $200,000–400,000, and a three-level reduction for acceptance of responsibility, resulting in an offense level of 16.[1] The applicable U.S. Sentencing Guidelines range was 21 to 27 months' imprisonment. Slovis Aff. Ex. 1.[2] Slovis sent the plea offer to Romalis by email the same day that he received it. Slovis Aff. Ex. 1. In a text message to his client Romalis that day, Slovis described his understanding that Romalis wanted to go to trial, but asked that she read the plea offer so that they could discuss it. Romalis Aff. Ex. Z. Slovis also informed Romalis that if she wanted to plead guilty, the decision was up to her. Romalis Aff. Ex. AA. Romalis alleges that Slovis then advised her not to accept the plea offer because it "was above the Guidelines sentencing range of 12 to 18 months." Romalis Aff. ¶ 7. Romalis rejected the plea offer.

---

[1] All calculations were based on U.S.S.G. § 2B1.1, 3E1.1 (2012).

[2] Romalis states that the plea offered by the Government set forth a Guidelines range of 24 to 30 months' imprisonment, but a copy of the plea offer shows a Guidelines range of 21 to 27 months' imprisonment. Slovis Aff. Ex. 1.

2

Assistant United States Attorney Christopher Frey met with Romalis and Slovis on February 19, 2013 for a reverse proffer. At the meeting, Frey extended Romalis another plea offer. Frey explained the terms of the offer, the potential sentencing exposure Romalis risked by going to trial, and the evidence that would be presented against her at trial. Frey Aff. ¶ 2. The February 2013 plea offer included the same base offense level, increase, loss amount, and reduction as the June 2012 offer. Frey Aff. ¶ 5. Frey stated that Romalis faced a statutory maximum sentence of 40 years' imprisonment if convicted on both charges at trial. Frey Aff. ¶ 3. Frey also explained that Romalis's conviction would likely result in a base offense level of 19 to 25 with corresponding Guidelines ranges of 30 to 37 months' or 57 to 71 months' imprisonment. Frey Aff. ¶ 5. Slovis maintains that he "fully discussed with petitioner the proffer session." Slovis Aff. ¶ 46. Romalis ultimately rejected the plea offer and proceeded to trial.

Romalis alleges that she was never informed that she could face a sentence longer than 12 to 18 months' imprisonment, but also claims that she was never advised that she could face more than 24 to 30 months' imprisonment if convicted at trial. *Compare* Romalis Aff. ¶ 19 *with* Romalis Aff. ¶ 7. According to Romalis, Slovis misled her as to the strength of her case. Romalis Aff. ¶ 8. Slovis's text messages to Romalis reflect Slovis's opinion that the case was winnable. *See, e.g.,* Romalis Aff. Exs. AA ("[O]ur case will be winnable."), DD ("I have confidence we will win and I want you to go to trial.").

3

Slovis maintains that, at all times, he fulfilled his professional obligations by "fully discuss[ing] [the] plea offer with petitioner as well as trial strategy and her potential exposure were she to be convicted after trial." Slovis Aff. ¶ 27. He discussed the Government's plea offers with Romalis on at least twenty occasions. Slovis Aff. ¶ 30. During those discussions, Slovis says he explained to Romalis that "the decision to enter a plea of guilty or not was hers and hers alone and that if she was concerned about her chances at trial and/or her sentence exposure should she be convicted after trial, and was, in fact, guilty, she should enter a plea pursuant to the proffered plea agreement." Slovis Aff. ¶ 37.

When Romalis expressed a desire to proceed to trial, Slovis turned his attention toward preparing for trial and reassured Romalis that he was confident in his trial strategy. Slovis Aff. ¶¶ 33–34. Slovis attributes Romalis's desire to go to trial to her fear that she would lose her teaching license if she pled guilty. Slovis Aff. ¶ 32; Opp'n Ex. 2.

Romalis was tried with two co-conspirators. The evidence at trial established that Romalis participated in the scheme to defraud the Claims Conference by submitting fraudulent applications for hardship funds. A witness at trial testified that Romalis provided documents for between 150 and 200 fraudulent applications. Romalis was found guilty.

After trial, Slovis admitted that he had "made a mistake" concerning the Guidelines range applicable to Romalis. Romalis Aff. Ex. LL. At sentencing, the

Guidelines range was determined based on the number of fraudulent applications she helped submit. Based on trial testimony, the court found that Romalis helped submit 150 to 200 fraudulent applications, and estimated the loss to victims at $700,000. The $700,000 loss calculation led to a fourteen level increase, putting Romalis's Guidelines range at 37 to 46 months' imprisonment. In her sentencing submission, Romalis stated that "the sole reason [she] decided to go to trial rather than enter a guilty plea was because a conviction [would] terminate her two teaching certifications." Opp'n Ex. 5 at 3. Romalis was sentenced to 46 months' imprisonment. She began serving her sentence in April 2014.

Throughout the course of the representation, Romalis alleges that she and Slovis were involved in a relationship, "frequently went on dates together, and became intimate." Romalis Aff. ¶ 4. In text messages between the two, Slovis and Romalis expressed affection for each other and often used terms of endearment. See, e.g., Romalis Aff. Exs. A, G, I, L. Romalis says that her decision to reject the Government's plea offer was "based on [her] intimate relationship" with Slovis. Romalis Aff. ¶ 13. Romalis also speculates that Slovis was "motivated by romance and money," Romalis Aff. ¶ 28, and "was stringing [her] along in order to prolong [their] relationship," Romalis Aff. ¶ 25.

Slovis denies Romalis's characterization of their relationship, asserting that he "had neither a romantic nor intimate relationship with petitioner." Slovis Aff. ¶ 13. Rather, he says that he had a "personal relationship" with her,

5

and that the two "frequently expressed a familial affection towards one another." Slovis Aff. ¶¶ 14, 15, 19. In any event, Slovis maintains that his professional judgment was never clouded by his personal relationship with Romalis. Slovis Aff. ¶ 16.

## DISCUSSION

A federal prisoner may file a habeas petition in the sentencing court to vacate, set aside, or correct a conviction or sentence that was imposed in violation of the Constitution or the laws of the United States. 28 U.S.C. § 2255(a). A petitioner must prove her claim by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

Under the Sixth Amendment, criminal defendants are entitled to effective assistance of counsel at all critical stages of the case, including during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To determine whether counsel's performance was defective the court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985). Under *Strickland*, a defendant must demonstrate (1) deficient performance—that counsel's performance fell below an objective standard of reasonableness—and (2) prejudice—that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Torres v. Donnelly*, 554 F.3d 322, 325 (2d Cir. 2009) (quoting *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007)). A court may dispose of an ineffectiveness claim on either ground. *Strickland*, 466 U.S. at 700.

6

Section 2255 provides for a "prompt hearing" if the petitioner establishes that she has a plausible claim for relief. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). If it is clear from the motion, attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief, no evidentiary hearing is required. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding," *Broxmeyer v. United States*, 661 F. App'x 744, 750 (2d Cir. 2016) (summary order) (quoting *Puglisi*, 586 F.3d at 214), particularly if the judge presiding over the habeas petition also presided over the trial, *Broxmeyer*, 661 F. App'x at 750 (citing *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)).

The affidavits and exhibits now in front of the court provide ample information for the court to rule on this habeas petition. Romalis's request for a hearing is therefore denied.

**A.    Failure to Advise During the Plea-Bargaining Process**

Romalis first argues that her trial counsel was ineffective because he did not advise her in conjunction with the plea deal offered by the Government.

A habeas petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Torres*, 554 F.3d at 325. Counsel has a duty to inform his client of any plea offers and advise his client on whether to accept or reject a plea offer. *Missouri v. Frye*, 566 U.S. 133, 145 (2012); *Purdy*

7

*v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000). Failure to do so can constitute deficient performance under the first prong of *Strickland*. *See Frye*, 566 U.S. at 147. "[T]here is a 'wide range' of what qualifies as reasonable advice pertaining to the acceptance or rejection of a plea offer." *Meszaros v. United States*, 201 F. Supp. 3d 251, 268 (E.D.N.Y. 2016) (citing *Purdy*, 208 F.3d at 45). Ultimately, the decision of whether to accept a plea offer rests with the client, and counsel may not coerce a client to accept or reject the offer. *Purdy*, 208 F.3d at 45. But counsel has a duty inform the client of the terms of the plea offer and "should usually inform the defendant of the strengths and weaknesses of the case against [her], as well as the alternative sentences to which [she] will most likely be exposed." *Purdy*, 208 F.3d at 45.

Romalis acknowledges that Slovis conveyed the plea offer to her, requested that she review it, and gave her advice on whether to accept or reject it. Romalis Aff. ¶ 7. But Romalis argues that Slovis's performance was still deficient because he miscalculated the Guidelines sentence she would receive if convicted. Pet. at 14–20. "[A] 'mistaken prediction' of the sentence to be imposed—a mistaken Guidelines calculation—does not rise to the level of ineffective assistance of counsel." *Diaz v. United States*, No. 08 CV 2247, 2009 WL 2337263, at *4 (S.D.N.Y. July 27, 2009) (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam)). So even if Slovis miscalculated the Guidelines range Romalis would be exposed to at sentencing, his actions are insufficient to establish deficient performance under *Strickland*.

8

In addition to showing that counsel's performance fell below the standards articulated above, a petitioner must show a reasonable possibility that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). If a defendant is convicted at trial and later alleges ineffective assistance of counsel in connection with a plea offer, she "must demonstrate a reasonable probability that but for counsel's deficient performance, [she] would have pled guilty instead of going to trial." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).

The court "need not accept petitioner's self-serving, post-conviction statements that they would have pleaded guilty if properly advised." *Meszaros*, 201 F. Supp. 3d at 269. Rather, "some objective evidence other than defendant's assertions" is required to establish prejudice. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). A significant disparity between the sentence offered by the Government at the plea stage and the sentence a defendant receives after trial can support a finding of prejudice under *Strickland*. *Meszaros*, 201 F. Supp. 3d at 269. Courts in this Circuit have found that sentencing disparities of 113 months, *Pham*, 317 F.3d at 182–83, and 90 months, *United States v. Gordon*, 156 F.3d 376, 378, 381 (2d Cir. 1998), between the plea offer and the defendant's sentence after conviction could demonstrate prejudice. Although there is no exact formula for determining whether a sentencing disparity is significant enough to support a finding of prejudice, *Meszaros*, 201 F. Supp. 3d at 269 n.16, the 10-month disparity here between the sentencing range offered by the Government (21–27 months) and

9

the sentencing range after conviction (37–46 months) does not satisfy this standard.

The only evidence Romalis offers to support her claim that she would have accepted the plea offer is her own statement: "Had I known that I faced a potential sentence of up to 46 months, or understood the nature of the Government's evidence against me, I would have undoubtedly accepted the Government's plea offer of 24 to 30 months." Romalis Aff. ¶ 26. Standing alone, that statement is insufficient. *See Meszaros*, 201 F. Supp. 3d at 269.

Furthermore, Romalis's statement is contradicted by the record. In her sentencing submission, which she drafted largely by herself, Romalis Aff. ¶ 27, Romalis stated that "the sole reason" she rejected the Government's plea offer and proceeded to trial was that "conviction [would] terminate her two teaching certifications." Opp'n Ex. 5 at 3. Romalis's statement is also severely undermined by the fact that Frey provided Romalis with a detailed account of the claims, the evidence to be used against her, her maximum sentencing exposure, and the applicable Guidelines ranges during the reverse proffer. *See Meszaros*, 201 F. Supp. 3d at 271 (petitioner could not show ineffective assistance at plea-bargaining stage when he was fully informed of the case against him during a reverse proffer); *Ortiz v. United States*, 15cv1419, 2015 WL 5613182, at *3 (S.D.N.Y. Sept. 24, 2015) (petitioner could not show ineffective assistance at the plea-bargaining stage where he was informed of a plea offer and strength of the case against him at a reverse proffer). The court

finds that even if Romalis had received the advice from Slovis that she claims is lacking, there is no reasonable likelihood she would have accepted the plea offer.

Because Romalis has failed to demonstrate that Slovis was ineffective or that she suffered prejudice as a result of Slovis's performance, Romalis's claim for ineffective assistance of counsel based on Slovis' advice during the plea-bargaining process fails.

## B. The Alleged Romantic Relationship

Romalis also states that she and Slovis were involved in a romantic relationship throughout the pendency of Romalis's criminal case. Romalis's petition does not specifically allege that the romantic relationship constituted deficient performance, standing alone. Rather, she argues that "Slovis's romantic objectives, coupled with his utter misunderstanding of Ms. Romalis's potential sentence exposure, ultimately led to her proceeding to trial." Pet. at 5. She alleges that Slovis violated the New York State Rules of Professional Conduct by engaging in a romantic relationship with her. Pet. at 16.

First, even if Slovis's actions violated the New York State Rules of Professional Conduct, Romalis cannot demonstrate that his advice regarding her sentencing exposure amounted to ineffective assistance of counsel under *Strickland. See supra.*

Second, interpreting Romalis's petition to raising a conflict of interest claim—that Slovis's romantic involvement with her created an obligation that

11

interfered with his duty to provide professional advice at the plea-bargaining stage—that claim also fails.

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Cohan*, 798 F.3d 84, 88 (2d Cir. 2015) (quoting *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005). But the role of the Supreme Court's Sixth Amendment conflict of interest jurisprudence is "not to enforce the Canons of Legal Ethics." *Mickens*, 535 U.S. at 176. So the existence of an intimate relationship between a defendant and counsel may not always amount to a conflict of interest, even if it violates the code of professional ethics. *See, e.g., Earp v. Ornoski*, 431 F.3d 1158, 1185 (9th Cir. 2005) ("[T]he state court's determination that the intimate relationship between [defendant] and his counsel during the trial and sentencing did not constitute a conflict of interest was neither contrary to, nor an unreasonable application of, established federal law.").

Rather, a petitioner seeking relief on the basis that counsel suffered from a conflict of interest must show (1) a per se conflict, *Armienti v. United States*, 234 F.3d 820, 823–24 (2d Cir. 2000) (citations omitted), (2) "a potential conflict of interest that resulted in prejudice to the defendant," *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (internal citations omitted), or (3) "an actual conflict of interest that adversely affected the attorney's performance," *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (internal citations omitted).

A per se conflict requiring automatic reversal exists only where trial counsel is unauthorized to practice law or was implicated in the same underlying crime as the defendant. *Armienti v. United States*, 234 F.3d 820, 823–24 (2d Cir. 2000) (citations omitted). A potential conflict of interest is "a situation in which it is possible that the attorney's interest will diverge form the client's in the future." *United States v. DeLaura*, 858 F.3d 738, 743 n. 2 (2d Cir. 2017) (internal quotations omitted). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d 304, (2d Cir. 1993) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980)).

When counsel is burdened by an actual conflict, prejudice is presumed and defendant need only prove that the conflict adversely affected the attorney's performance. *See Levy*, 25 F.3d at 155 (citing *Winkler*, 7 F.3d at 307). To prove adverse effect, the defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.* at 157 (quoting *Winkler*, 7 F.3d at 309). When counsel is burdened by only a potential conflict, the claim is governed by *Strickland*, and defendant "must establish both that counsel's conduct fell below an objective standard of reasonableness and that but for this deficient conduct," the outcome would have been different. *Armienti v. United States*, 234 F.3d at 824. Petitioner bears the burden of demonstrating that a

13

conflict existed. "The burden of proof cannot be met by speculative assertions of bias or prejudice." *Triana v. United States*, 205 F.3d 36, 41 (2d Cir. 2000).

Slovis did not suffer from a per se conflict because he was authorized to practice law and was not implicated in any crime. Therefore, Romalis must demonstrate either (1) that the conflict alleged adversely affected Slovis's performance or (2) prejudice. Romalis has failed to do so. In support of her claim, Romalis speculates that Slovis improperly advised her in conjunction with the plea offers because he wanted to continue their relationship as long as possible. But Romalis must provide more than that to demonstrate that Slovis's performance was adversely affected by his relationship with her. *See Triana*, 205 F.3d at 41. Romalis also cannot show that she suffered prejudice due to Slovis's advice in conjunction with the plea offers. *See supra.* Accordingly, while the alleged relationship between Slovis and Romalis was potentially unethical, Romalis has not offered sufficient factual support to state a claim for relief.

In addition to what is said here, it is important to reiterate that Romalis actually went to trial and was convicted.

## CONCLUSION

For the reasons set forth above, Romalis's motion to vacate her sentence pursuant to 28 U.S.C. § 2255 is denied in its entirety. The Clerk of Court is requested to terminate the pending motions and close the case.

SO ORDERED

Dated: New York, New York
       August 4, 2017

_Thomas P. Griesa_
Thomas P. Griesa
U.S. District Judge